2010 Ark. 280

**Mary D. FITTON, as Trustee of the Mary D. Fitton Revocable Trust, Appellant,**

v.

**BANK OF LITTLE ROCK, Appellee.**

No. 09–1273.

Supreme Court of Arkansas.

June 3, 2010.

Rehearing Denied Aug. 6, 2010.

Goodwin Moore, LLP, by: Harry Truman Moore, Paragould, and Bristow & Richardson, P.L.L.C., by: Melissa B. Richardson, Jonesboro, for appellant.

Frederick S. Wetzel, III, P.A., Little Rock, for appellee.

RONALD L. SHEFFIELD, Associate Justice.

Appellant Mary D. Fitton, in her capacity as trustee of the Mary D. Fitton Revocable Trust, appeals from a Pulaski County Circuit Court decree finding that she was not entitled to claim a homestead exemption and that the one-half interest in the property once held in trust by the John D. Fitton Trust was subject to a mortgage. The circuit court granted the petition of appellee, Bank of Little Rock, to foreclose on the one-half interest the John D. Fitton Trust held on the property. Mary appeals from this decree, claiming that the trial court erred in denying her claim for a homestead exemption. Because this case presents an issue of first impression, of substantial public interest, and in need of clarification or development of the law, and requires an interpretation of an act of the General Assembly, our jurisdiction is pursuant to Ark. R. Sup.Ct.

1–2(b)(1), (4), (5), and (6). We reverse and remand.

On October 26, 1997, Mary and John D. Fitton were married. Prior to the marriage, John executed a quitclaim deed, in which he created a joint tenancy between himself and Mary with a right of survivorship on a property located at 286 River Ridge Point in Little Rock, Arkansas. On September 8, 1998, they each transferred their undivided one-half interest in the residence to their respective revocable trusts as tenants in common. On February 8, 2005, Mary and John separated. On February 10, 2005, two days after separating from his wife and while still legally married, John, individually and as trustee of the John D. Fitton Revocable Trust, signed a promissory note with the Bank of Little Rock for $155,000. The mortgage was secured by the undivided one-half interest owned by his revocable trust. John waived his homestead rights in the mortgage given to the Bank of Little Rock. At the time, Mary was not aware that John had mortgaged his interest in the property nor did she join in the mortgage pledging the property to the bank. On February 22, 2006, Mary and John finalized their divorce. Pursuant to the property-settlement agreement, Mary received John's interest in the residential property held by the John D. Fitton Revocable Trust. The property-settlement agreement also provided that Mary would be "responsible for the satisfaction of the existing debt" against the residence;[1] however, neither the agreement nor the divorce decree indicated that Mary would assume the mortgage on John's interest. Mary deeded the property acquired from John to her revocable trust on February 22, 2006. She did not pay the outstanding mortgage.

On August 25, 2006, the Bank of Little Rock filed suit in the Pulaski County Circuit Court against Mary Fitton, as trustee of the Mary D. Fitton Revocable Trust, and John D. Fitton, personally and as trustee of the John D. Fitton Revocable Trust, seeking to foreclose on the property. In her capacity as trustee, Mary answered the complaint, alleging that none of the deeds conveying the property into her revocable trust contained a relinquishment of her individual rights of dower and homestead. The trial court granted the Bank of Little Rock's motion for partial summary judgment, finding that, under Ark.Code Ann. § 18–12–403 (Repl.2003), the homestead exemption was not applicable because the property was not owned by a "married person" or "spouse," but rather by the John D. Fitton Revocable Trust and the Mary D. Fitton Revocable Trust as tenants in common. At the conclusion of the trial, a decree was entered foreclosing the Bank of Little Rock's mortgage on the one-half interest of the John D. Fitton Revocable Trust, now owned by the Mary D. Fitton Revocable Trust. Mary filed a timely notice of appeal from this decree.

On appeal, Mary claims that she possessed a homestead exemption in the property at the time the mortgage was executed. She argues that the trial court erred in finding that, because the property was legally titled to her trust rather than to her, the Bank of Little Rock's mortgage against her property was valid. She maintains that the conveyance of the property to a revocable trust for estate-planning purposes did not destroy her homestead exemption. She also claims that she did not "abandon" her homestead, under Arkansas law, by conveying her property to a revocable trust. The Bank of Little Rock counters that Mary abandoned any homestead right she may have had when she

---

1. Neither party argued that this was an "assumption" of John's mortgage.

conveyed her property to a revocable trust, a separate legal entity that was a tenant-in-common with another revocable trust.

We have previously stated that our standard of review with respect to statutory and constitutional interpretation is de novo. *Simmons First Bank of Ark. v. Bob Callahan Servs., Inc.*, 340 Ark. 692, 13 S.W.3d 570 (2000). "On appeal, our task is to read the laws as they are written, and interpret them in accordance with established principles of statutory and constitutional construction.... The fundamental rule is that the words of the constitution or statute should ordinarily be given their obvious and natural meaning." *Hodges v. Huckabee*, 338 Ark. 454, 458, 995 S.W.2d 341, 345 (1999). Furthermore, we are not bound by the decision of the trial court; however, in the absence of a showing that the trial court erred in its interpretation of the law, that interpretation will be accepted as correct on appeal. *Id.* We do not reverse a finding of fact by the trial court unless it is clearly erroneous. *Middleton v. Lockhart*, 344 Ark. 572, 43 S.W.3d 113 (2001). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Id.*

The central issue in this appeal is whether a homestead exemption can extend to a revocable trust where the person claiming the exemption is the settlor, the trustee, and one of the beneficiaries of the trust, and maintains the property held by the trust as her principal place of residence. In enacting Ark.Code Ann. § 18–12–403, the legislature addressed the issue

of property held by spouses by invalidating any conveyance affecting entitlement to a homestead exemption in which a spouse did not join in the execution or acknowledge it. Section 18–12–403 states that

> [n]o conveyance, mortgage, or other instrument affecting the homestead of any married person shall be of any validity, except for taxes, laborers' and mechanics' liens, and purchase money, unless his or her spouse joins in the execution of the instrument, or conveys by separate document, and acknowledges it.

Ark.Code Ann. § 18–12–403 (Repl.2003). The purpose of this statute, originally, was to protect the wife's interest in the homestead by forbidding the husband either to sell or to encumber the property without the wife joining in the deed.[2] *Park v. Park*, 71 Ark. 283, 72 S.W. 993 (1903).

By adopting Article 9, § 3, the framers of the Arkansas Constitution preserved the homestead right in our constitution. This provision states that

> [t]he homestead of any resident of this State, who is married or the head of a family, shall not be subject to the lien of any judgment or decree of any court, or to sale under execution, or other process thereon, except such as may be rendered for the purchase money, or for specific liens, laborers' or mechanics' liens for improving the same, or for taxes, or against executors, administrators, guardians, receivers, attorneys for moneys collected by them, and other trustees of an express trust, for moneys due from them in their fiduciary capacity.

Ark. Const. art. 9, § 3. The object and purpose of the homestead law is to protect the family from dependence and want.

---

**2.** The statute was later expanded to protect the homestead rights of husbands as well. *Conser v. Biddy*, 274 Ark. 367, 625 S.W.2d

457 (1981) (decided prior to its amendment in 1981).

*Middleton v. Lockhart,* 344 Ark. 572, 43 S.W.3d 113 (2001). It is intended to preserve the family home. Furthermore, the law is to be liberally construed in the interest of the family home, and divorce will not terminate the homestead right in the head of a household who continues to occupy the homestead. Also, it is not terminated by the death of a spouse or by the departure of children who have reached the age of majority. *Id.* The General Assembly further developed the homestead right with the passage of Ark. Code Ann. § 18–12–403.

We have not yet considered the issue of homestead properties held in revocable trusts in the context of property conveyances. However, the treatment of homesteads and revocable trusts by other authorities can lend guidance to our analysis today. The Arkansas legislature has addressed the issue of homestead exemptions and revocable trusts in the context of property tax assessments. It has stated that the term homestead "shall also include a dwelling owned by a revocable trust and used as the principal place of residence of a person who formed the trust." Ark.Code Ann. § 26–26–1122(a)(1)(B) (Supp.2009). More significantly, the Eighth Circuit Court of Appeals addressed a similar issue to the issue before us today in *Richardson v. Klaesson,* 210 F.3d 811 (2000).

In *Richardson,* a case relied upon by both parties, the Eighth Circuit Court of Appeals considered whether the property owned by a trust was a homestead and, therefore, exempt from execution. In answering the question in the negative, the Eighth Circuit stated that

> [t]he Klaessons occupy the real property in which they claim a homestead exemption as a residence, but the fee-simple title to it is held in trust by the trustees of the Klaesson Family Trust. The

Klaessons are among the trustees of the trust, but they are not beneficiaries of it, and, although they were its settlors, they did not retain any reversionary interest in the corpus, not even a power to revoke. They occupy the property merely because they have a contract with the trust which "requires" them to "live on the premises," subject to having to vacate on fifteen days' notice. This revocable right of occupancy is the only interest in the property that they enjoy.

*Id.* at 813. In discussing the law in Arkansas regarding homestead exemptions the court noted that

> [t]he Klaessons provide us with numerous cases that hold that equitable owners may claim homestead rights, and we entertain no doubt that, under Arkansas law, a person in possession as the beneficiary of a trust could claim the protection of the homestead exemption, assuming, of course, that he or she was married or the head of a family. But here the Klaessons are not beneficiaries of the trust. Their right to occupy is merely contractual and subject to revocation, which makes them at most tenants at will of the relevant property.
>
> . . . .
>
> . . . [W]e believe and hold that a person who occupies premises with the permission of the owner has a sufficient interest in the realty to support a claim for a homestead exemption under Arkansas law. . . . It is important to realize, however, that such a homestead exemption would be good only to the extent of the interest owned.

*Id.* at 813.

Although the *Richardson* case is not binding on our court, it was decided based on Arkansas law and offers persuasive support for our decision. Indeed, other jurisdictions have extended the homestead exemption to revocable trusts

in other circumstances. *See Redmond v. Kester*, 284 Kan. 209, 159 P.3d 1004 (2007) (holding that a bankruptcy debtor may claim the homestead exemption for real property transferred to a self-settled revocable trust, even though the settlor and the beneficiary, as well as the bankruptcy debtor, were the same person); *Engelke v. Engelke*, 921 So.2d 693 (Fla.App.2006) (holding that the property held by the revocable trust, in which the trustee was the beneficiary and the property was his permanent residence, was a constitutionally protected homestead property); *Callava v. Feinberg*, 864 So.2d 429 (Fla.App.2003) (holding that a wife could claim a homestead exemption even though she only had a beneficiary interest in the property held in trust). Thus, we hold that a married person with a beneficiary interest in a property that she maintains as a principal residence is ₈entitled to a homestead exemption, even though the title of the property is held by a revocable trust.

In the case at hand, Mary is the trustee and one of the beneficiaries of the Mary D. Fitton Revocable Trust. She is also the person who formed the trust. The property in question is her principal place of residence. She was married at all times pertinent to the mortgage and conveyances at issue. Relying on the reasoning in *Richardson*, and case law from this court relied upon therein, we hold that, according to the facts presented, Mary Fitton was entitled to a homestead exemption even though the title to the property was held by her trust. Furthermore, the fact that the trust holds the property as a tenant in common does not affect the outcome. *See Simpson v. Biffle*, 63 Ark. 289, 38 S.W. 345 (1896) (holding that, regardless of whether the property was held as tenants in common or by the entirety, the husband was entitled to hold property as a homestead).

As for the Bank of Little Rock's argument that Mary abandoned her homestead when she conveyed her property to the trust, in *Parker v. Johnson*, we stated that

> [t]he legal presumption is that the homestead right continues until it is clearly shown that it has been abandoned. The burden is upon one claiming that a homestead has been abandoned to establish that fact. The question of homestead and residence, being a question of intention, must be determined by the facts in each case, and the trial court's finding of fact will not be disturbed unless it appears to be against the preponderance of the evidence. An abandonment of a homestead is almost, if not entirely, a question of intent, which must be determined from the facts and circumstances attending each case. A removal from the homestead may be caused by necessity or for business purposes, and if the owner has an unqualified intention to preserve it as a homestead and return to it, his removal will not result in an abandonment of the land as a homestead.

₃368 Ark. 190, 196, 244 S.W.3d 1, 6 (2006) (citations omitted). Arkansas caselaw supports our finding that, based on the facts presented below, Mary did not abandon her right to homestead when she conveyed her interests to her trust, despite the Bank of Little Rock's claim that the trust is a separate legal entity. Furthermore, she has maintained the property as her principal place of residence although she transferred the legal title to a revocable trust, suggesting that she never intended to abandon her right to homestead. Thus, the Bank of Little Rock's claim is without merit. This holding is consistent with this court's policy of liberally construing the right to homestead. We reverse and re-

mand for proceedings consistent with our holding.

Reversed and remanded.

CORBIN, J., not participating.